and we're ready for the first case, Tiffany v. Costco-Holson. Good morning, Your Honors. I'm David Bernstein with Debevoise & Plimpton. I represent Costco. The district court here usurped the jury's role and found on summary judgment, despite hotly contested evidence, that Costco was a willful infringer as a matter of law, that it could not rely on the fair use defense, and that it was a counterfeiter as a matter of law. And that was error for the principled reasons described in our brief, but I'd like to focus on three of those today. First- What was your evidence that contradicted willfulness and bad faith? Yes, Your Honor. So we discussed the goodwill, the bad faith and good faith issue in our brief. And the key issues that the court should focus on is, first of all, when you're considering whether a party has acted willfully, that is subjective intent. That's not an issue that is well suited for summary judgment. And, indeed, this court held that in the EMI catalog case cited in our papers, were reverse summary judgment, recognizing how important it is. And what was the evidence? First of all, the term Tiffany is an acknowledged descriptive term for a particular type of setting. It has been for more than 100 years. It's been used in dictionaries, in advertisements, in books, in magazines by consumers to describe this unique type of setting. It's the only English language word that describes this type of a six-prong setting. Now, if I'm correct, the district court limited the claim against your client to the use of the word Tiffany standing alone and did not allow it with respect to your use of Tiffany setting or Tiffany style or anything like that. Is that correct? So it's almost correct, Your Honor. Please. What's interesting is that when the word Tiffany was used alone to describe the setting, just like the word cathedral was used alone, the word bezel was used alone, the word channel was used alone to describe the settings on those other rings, the court said that was counterfeiting. When the word Tiffany appeared with the word set or setting on the second line, the court said that wasn't even actionable. How could it be that no reasonable juror could say that Tiffany to describe these rings is automatically counterfeiting and at the same time that no reasonable juror could think that Tiffany with the word setting on the second line couldn't possibly be counterfeiting or infringement. So it is true that a number of the signs, and the signs are all in the record, a number of them said Tiffany setting, some said Tiffany style, some said Tiffany set. The line break can't possibly be the difference between non-actionable use of a sign and counterfeiting. Now to go back to Judge LaValle's question on the other evidence on good faith. So we know that Tiffany has been a term used for more than 100 years and indeed the evidence put in by Dr. Nunberg, not Dr. Nunberg, goes through in great detail the linguistic history and that's at the record starting at page 8307. Tiffany mount, Tiffany head, these are all different ways that this setting has been described and interestingly every single time Costco used Tiffany on its signs it was only for these rings that had this kind of setting. Even though the plaintiffs also sell bezel setting rings and cathedral setting rings and channel setting rings. You wouldn't deny that the use of Tiffany on the first line or the second line without the additional word set or setting is something that's capable of likely to cause confusion. I wouldn't say it's likely to cause confusion. I would say it's a question of fact for the jury as to whether it's likely to cause confusion. It certainly isn't counterfeiting, but on the question of good faith, Your Honor, the term Tiffany was taken from the vendor sheets that our vendors provided to us. For more than 20 years Costco has described these rings as being Tiffany or Tiffany setting rings, just like many others in the industry did and still do. Zales and Kay and other retailers do. So the question of whether that's likely to cause confusion, that's a question of fact that the jury should have decided. But if the question is good faith. They were not segregated and shown by themselves. They were intermixed with channel style and cathedral style and all the other styles. That's exactly right, Your Honor. And that's why the context is so important. As this court said in Winfrey, the Kelly against Winfrey case, when you're considering counterfeiting, you've got to consider context. And the context here is a display case that has many different rings with all the different settings. The settings were all identified on the signs in exactly the same way. In no case was any of the rings displayed with a Tiffany and Company blue box, that classic robin egg blue box that everyone knows about. And so when you look at that context, it's critical to recognize why it wasn't counterfeiting as a matter of law. These rings, by the way, didn't have Tiffany stamped on them. They had the manufacturer's name stamped on them, which is actually required by law. The boxes were beige boxes. They didn't have Tiffany anywhere on the box. The only place Tiffany appeared was only on the signs, these one by two inch signs, next to the rings in the display case with several hundred different products. And every single one of the rings where Tiffany was described was a Tiffany setting ring. There's no evidence whatsoever that we ever used the term Tiffany on rings that didn't have a Tiffany setting. Were there similar signs saying Basil or Cathedral on the others? Exactly. And that's one of the reasons the survey evidence is so bad. The survey evidence didn't show that context. In context, consumers would see that the word Tiffany was being used just like these other words were being used. And so when you look at it in context, although I will admit it's a question for the jury as to whether some consumers may have been confused, and there's very disputed evidence on confusion, but still it was not for the court to decide on summary judgment that this was automatically infringing, that it was automatically bad faith. Reasonable jurors who know that the purchase of a diamond engagement ring is one of the most important purchases a consumer ever makes. There's evidence in the record that grooms spend four months researching and looking for a ring. There's evidence in the record that brides, I think it was 68 percent of brides, try on the ring before they actually make the purchase. This court has said that the purchase of a diamond engagement ring is among the most deliberate, careful choices that a consumer makes. And a reasonable juror faced with the context of these rings would understand that this is something that is being used descriptively to describe the kind of setting. And indeed, Plaintiff's own survey showed that more than 60 percent, as flawed as the survey was, more than 60 percent of the consumers they surveyed knew that the term Tiffany operates as both a brand name and as a descriptive term. Just like the term polo in a case that the Southern District had. The term polo shirt is a generic term for a type of shirt, but polo is also a brand name for Ralph Lorenzo Parrot. Tiffany operates the same way. And these are questions of fact that should have gone to the jury. I do have a few additional points. I recognize the red light is on. I'm happy to maybe make my other points quickly. Or I can address the other points quickly and see if we have some questions. Thank you, Your Honor. So on good faith, there are a number of other points that are in the record on why Costco's use of this term was in good faith. You know, I do think that the context is key. The plaintiffs talk about how we also sell Rolex watches and Cartier watches. That is true. But in the context you have to look at, it's always in the Cartier box. These rings were not in the Cartier box. On infringement, I talked about sophistication. On the subject of faith, I would think something that tends to indicate absence of bad faith was Costco's reaction on the receipt of Tiffany's cease and desist letter, in which, if I understand correctly, you immediately corrected the practice, ceased to use Tiffany to describe the setting without the additional word, and if I'm correct on this, wrote to all the people who had purchased rings where the sign had used Tiffany to describe the setting without the additional word and explained to them that it did not mean to imply that it was sourced in Tiffany, the jewelry manufacturer, and offered their money back. That's exactly right, Your Honor. And that, well, and this is a different point. I think this has to do with the likelihood of confusion that only slightly more than one percent asked for their money back, 43 out of 3,300 or something like that. You have the numbers exactly right. And those signs, even though Costco had been using these signs for more than 20 years, within one week of receiving the objection from plaintiffs, Costco removed all those signs and wrote to all the customers, and as Your Honor pointed out, only 43 returns. There's case law that says that is the essence of good faith. Absence of bad faith, at least an issue a reasonable juror should have had the opportunity to assess. It doesn't necessarily mean absence of bad faith, because it could have been a strategic move. It could have been, okay, they got us now. We're going to do the best thing that we can to cover up. But it tends to indicate absence of bad faith. And certainly creates a question of fact. So two other very, very – I think you slightly overstated your argument at the start where you said that issues – you said something to the effect that issues of state of mind are not amenable to summary judgment. And that was true when I became a district judge about over 40 years ago, but that was changed by the summary judgment trilogy. And as the law is now, if the evidence is sufficiently one-sided with respect to bad faith or with respect to discrimination or whatever it is, if all of the evidence goes a certain way and there isn't evidence really on the other side, those issues are amenable to summary judgment. So I think you overstated the rule of the law. I don't mean to task you, Your Honor. Your point is that there is evidence on both sides. That's right. And in EMI, this court didn't say that good faith is always a question of fact. It just said intent is ill-suited for summary judgment. But it may be appropriate. Here, there is all the evidence of good faith that should have been assessed by the jury. Of course, the jury should have also had the chance to hear our fair use defense. You know, just like the pine tree shape in the Carfreshener case, which was a registered trademark, that pine tree shape for air fresheners was a registered trademark, and this court held in Carfreshener that the defendant, S.C. Johnson, who used the pine tree shape for its plug-in air fresheners, was using it descriptively. And what the court said is the public's right to use these descriptive images and words in good faith has to prevail over the exclusivity claims of the trademark owner, even though it was a registered trademark. On counterfeiting. Can I just ask a question on the waiver issue of counterfeiting? I think your adversary makes the argument that you didn't rely below on the stamping on the ring and that that argument isn't available to you on appeal. Your Honor, we actually do address this in our reply brief, but we have always disputed that it was even infringement. So if we're disputing infringement, of course we're disputing counterfeiting, which is the heightened form of infringement. And counterfeiting only applies when the mark is spurious, when you're passing it off as the real good. Now, we know what counterfeiting is. I mean, it's a crime. It's the crime that happens on Canal Street when fraudsters sell fake Rolex watches or phony Louis Vuitton handbags or, you know, all the other products. And in every case, those products bear the counterfeit mark. Our expert, Mr. Palmieri, testified that what a counterfeit is is a product that actually has the counterfeit mark on it. And Tiffany knows that. Tiffany took that position in the eBay against Tiffany case in front of Judge Sullivan. That was affirmed by this Court. At 576 F sub 2nd, 472 footnote 7, what Tiffany told Judge Sullivan is that to determine if an item is counterfeit, you have to look to see if one or more of the Tiffany marks appeared on the piece of jewelry. A physical inspection is required. That's what a counterfeit is. Even though the eBay listings use the term Tiffany in the sign, that alone doesn't make a counterfeit. You actually have to look at the product. And they do not cite, and we did not find, a single case ever, ever, that found a physical item, a piece of apparel, a piece of jewelry, a watch, anything to be counterfeit that did not have the actual counterfeit mark stamped on it. It cannot be counterfeiting as a matter of law if the product doesn't have the Airsats brand name stamped onto it or attached to it. But entirely apart from that, entirely apart from that, counterfeiting requires bad faith, and you say that bad faith in this case was a disputed issue of fact. Certainly on the summary judgment issue, but I'm actually making a stronger argument on the counterfeiting point, which is that it should be reversed as a matter of law. The infringement case should be remanded for trial. The jury should be given the opportunity to assess those. But the counterfeiting claim should actually be rejected by the court. They're rejected because the evidence here, the Tiffany word was used on the sign, but there was no mark on the ring. There was no misbranding. That's correct. And it's not only the ring, but as this Court said, in Kelly v. Fornsbury, context matters. It wasn't on the packaging. They didn't use the blue box. When we did sell actual Tiffany & Company merchandise, like Tiffany & Company sunglasses, we displayed it with the blue Tiffany box and the Tiffany & Co. font. When we sold a real Tiffany branded diamond ring in Japan, in one of our stores in Japan, which plaintiffs put an image of in their brief, if you look at the picture in their brief, it's right there with the blue package that says Tiffany & Company. So context matters. You're saying, for example, talking about dollar bills rather than merchandise, but just by analogy, if somebody says to you, this envelope contains $1,000, or this envelope contains $1,000, and I'll give it to you in exchange for that ring, and the envelope, in fact, contains tissue paper that doesn't purport to be dollars, that's not a counterfeiting case. It's a fraud case. It's other things. It's not counterfeiting, because to be counterfeiting, it's got to be the object itself purports to be the thing that it is not. Right, and even if it wasn't tissue paper, even if it was a piece of paper, and I wrote on it $1, U.S. Treasury, you still have to look at the context. Is it in the same font? Is it in the same style? That's what George Prescott said in the Audemars Piguet watch case, where she said, even if the watch was exactly the same, it still has the name of the manufacturer, Swiss legend, Trimex, on it. It can't be a counterfeit. It didn't have the right crown. For counterfeiting, it's the entirety of the product, stitch by stitch, the same. That a watch that actually says on it, a watch that says on it, Trimex, which was not a Timex, is not a counterfeit because its features don't resemble true Timex? No, Your Honor. I'm sorry. The trademark in that case was Trimex and Swiss legend. And the case wasn't brought by the maker of Timex. It was brought by Audemars Piguet on the shape of the Royal Oak watch. And we have images of those two watches in our brief. And what Judge Prescott said is, first of all, there were slight differences in the face of the bezel. And that alone meant it wasn't spurious. It wasn't substantially identical. But even if it was substantially identical, she said, because it had the name of its manufacturer, Swiss legend, and that particular watch was called Trimex within their line, that showed that it wasn't being passed off as an Audemars Piguet watch. These rings were stamped with the name of the manufacturer, RB Diamond. In fact, there's a statute that requires the stamping of the actual manufacturer's name when you sell a ring that's also stamped platinum to prevent misbranding. Your adversary says was not made below, if I'm remembering the record correctly. So the challenge to it being spurious, I mean, we... No, just the argument, just the factual argument that below, you were saying that the ring was unbranded. And it is on appeal, and maybe I'm just misremembering. It's on appeal that you're focusing on the branding on the ring. So I actually think the term branding is maybe the confusion. Unbranded in the sense that it wasn't sold with a nationally renowned brand. It wasn't sold as a Harry Winston or something like that. But it does have the name of the manufacturer on it. Whether they call that their brand, it is certainly their trademark. It may not be a registered trademark. But the statute does require that when you sell platinum rings that you stamp platinum, you must put the manufacturer's stamp on it so that consumers know who to complain to if it turns out not to be platinum, so it's not misbranded. I guess the very last point I'll quickly make, and I'll reserve my additional time, is just on punitive damages. I would ask the Court to look at pages 59 to 61 of our opening brief. It is clear under New York law that punitive damages are not available if there's no compensatory damages. It's clear under federal law that there's no punitive damages for violations of the Lanham Act. And I'll look forward to answering any additional questions in my rebuttal period. Weren't the punitive damages under state law for unfair competition? They were, Your Honor. But the problem is that under New York law, to get punitives, you have to show that you've actually been harmed, that there's actually some compensatory damages. And here, Tiffany put in no evidence whatsoever of harm. And by the way, that actually makes sense from a common-sense perspective. So you did not request that the jury be specifically charged that they could not award punitives without finding actual damages? That's at least the argument that's being made to us. Do you want to respond? That's a legal issue, Your Honor. It's not up to the jury to decide whether compensatory damages are required as a matter of law to support a finding of punitive damages. The jury was charged by judges. You're not complaining about them not being correctly charged. You're complaining about the sufficiency of the evidence? That they shouldn't have been charged with punitives at all. That I'm more troubled by. I mean, if you're complaining that the judge failed to give a charge that she should have, your failure to request it requires us to view that in one light. If you're complaining that, look, the evidence as a matter of law does not support punitives, that's a different argument. I had thought you were making the first. And if that were the case, your failure to request the charge is what I was asking you to address. Yes. I understand, Your Honor. Thank you. We're not objecting to the sufficiency of the evidence of violence. What we're saying is that Tiffany came into court and said, we're not claiming we've lost any sales. We're not claiming we've been harmed in any way that's compensatory. Rather, we're asking for disgorgement of profits as our award. That is an equitable remedy that's only allowed in this circuit, at least as of now, if there's been a finding of willfulness. And so our point was if they've elected to take only a disgorgement of profits remedy without showing any evidence that they've actually suffered compensable harm, they can't get punitives under state law. And we did specifically preserve that, Your Honor. And that's on page 28 of our reply brief where we talk about how that issue was preserved. But the point isn't that the evidence was insufficient. It's that given the absence of any showing or any claim of compensatory harm, given that they claimed their damages or they claimed for their remedy only disgorgement, under New York law, that can't support an award of punitive damages.  Of course, Your Honor. Would you address the issue of some of the purchasers? There was testimony from some of the purchasers who said something to the effect that they believed the sign, that they believed they had been told by Costco salespeople that these were Tiffany watches, Tiffany rings. Yes, Your Honor. So there's, I'm going to say, three pieces of evidence that the plaintiff's claim is evidence of confusion. First is their survey. They say the survey is unrebutted. That's nonsense. We put in the declaration and the testimony of Dr. Weiner, who challenges the survey at great length. The second thing they cite, Your Honor, are five instances of so-called consumer confusion. Now, first of all, I'll say that's de minimis in the context of 3,300-plus sales of rings. And a jury should have had the opportunity to assess that evidence. But what did some of those people say? Mrs. Bentley said, I don't recall what the employee said. That's at page A13559. Well, that's not evidence. 13559? 13559. She says, I don't recall what the employee told me. Mr. Pangellinian says, I recall being told it was a Tiffany diamond. Well, I think a jury should have had the chance to assess that. Was he maybe told it was a Tiffany setting? That's at page A13631. But even if there are these de minimis five consumers in the context of 3,300 rings, that should have been assessed by the jury. And as far as the employee evidence goes, they cite a single inquiry. And that was at page A15334, where a customer emailed and said, when you say Tiffany on the sign, do you mean Tiffany brand or Tiffany setting? This court said in Nora Beverages that an inquiry is actually evidence of non-confusion. That's not showing someone was confused. That shows that they understand the term Tiffany can be both a brand name and a descriptive use for the setting. And they were just inquiring. That's not evidence of confusion. This is all the type of disputed facts that a reasonable jury should have had the opportunity to assess. And the answer to that question. The answer to the question was, no, it's Tiffany setting. The question was, when you have Tiffany on the sign, does it mean setting or does it mean brand? It depends on what line, right? It depends how, where the word is used. Sometimes it means, sometimes it meant the setting. Sometimes it meant Tiffany ring. At Costco, it never meant Tiffany brand. Every single one of these rings was not a Tiffany branded ring. Costco sell real Tiffany rings, calling them Tiffany? In Japan, we sold one real Tiffany ring. And it was called Tiffany jewelry on the sign. There was only one instance of that? That's the only one we're aware of, Your Honor, that's in the record. Never in the United States. In the United States, the signs said Tiffany setting, Tiffany set, Tiffany style. Sometimes just Tiffany. But always in the context... You never sold genuine Tiffany rings in the United States? Not during the time period where discovery occurred. Whether it happened more than six years ago. I meant under authorization. No, because the plaintiff won't sell their products to us, but we certainly are able to get Cartier watches and Tiffany sunglasses through the marketplace, and we are allowed to sell those as a matter of law. But we've never sold Tiffany branded diamond engagement rings in the United States. Are there any other products besides the sunglasses? I remember them from the record, but any other actual Tiffany products? Those are the only actual Tiffany products that the record reflects were sold by Costco. And when they were sold, they were sold with the branding. And, you know, I think it's quite deceptive when you look at the photo in plaintiff's brief. They show the sign, but they crop out the box that was right there. Context matters. And in context, these are not counterfeit as a matter of law. And, you know, I look forward to being able to explain to a jury why it's not infringement, why it's not confusing as a matter of fact, but that should not have been decided by the district court on summary judgment. Thank you very much, Your Honors. Good morning, Your Honors. Jeffrey Mitchell. I'm here with Brett Katz and Judith Cullen, Brown George Ross, and we represent Tiffany. I hope I'm not am I limited to the 10 minutes or that was quite longer than that. We'll take as long as we need to. Thank you. I'm going to start with the following proposition to the panel. If a bride said to you, I have a Tiffany engagement ring, I think the last thing you'd think is she had an engagement ring made by Costco. That's at the heart of this case. The Tiffany trademark has been the subject of lawsuits and enforcement. I have a case going back to 1932. No case has ever found Tiffany as a standalone descriptive. Judge LaValle, your law review article for Columbia Law Review discusses descriptiveness, and at the heart of descriptive fair use is a word has to be descriptive. Costco's case was misleading, and Judge Swain took a long time to sort through the evidence. She worked hard on this. Years. I mean, it took a year to write the decision. Costco's evidence was about Tiffany setting. No one has ever called this ring a Tiffany. Maybe people have referred to it as Tiffany setting. I would say to you, your honors, let's say Costco decides to sell. The things that you are saying have a lot of justification, but I think they're beside the point of what seems to me at least to be the major point in this case. The major point in this case, as I see it, was the district court justified in granting summary judgment, taking away from the jury the issue of willfulness and bad faith? It seems to me that using the word Tiffany by itself on a ticket that describes a ring has a substantial capacity to create likelihood of confusion. I think that's probably true, but the important question is that the judge took away from the jury every issue of liability, including liability for a simple trademark infringement, by taking away the opportunity to present an argument of fair use to the jury because the judge said, I have found on summary judgment that there is no disputed issue of fact. It can only be found to be willfulness equivalent to bad faith. That to me is what's important here, and you're not talking about that. Go ahead if you want to. Let's start with the basic first premise of willfulness. Absolutely nothing from Costco responds to the testimony of the purchasers. Joseph Bentley, the husband of Mrs. Bentley, testified. This is in A13399 and 13400, the record. He talks about the salesperson. She said, quote, she said it was made by Tiffany, close quote. He then goes on, quote, she said they were Tiffany rings and that they bought so many of them. Costco bought so many of them, that's why they could sell them so cheap, close quote. That's not describing a ring setting. That's direct evidence. Pamela Miller testified. Yes, quote, this is 13414 of the record. Yes, quote, yes, I asked, is this a Tiffany ring? He said, yes, it is a Tiffany ring, close quote. At 13419 to 13420 of the record, Andrew Pangelinan testified that the salesman told him it was a Tiffany diamond. Counsel didn't go on and say the rest. Mr. Pangelinan went on and said, quote, I have told actually members from work that I bought a Tiffany ring and friends and family at that time, close quote. That's direct evidence of selling these rings as Tiffany rings. This court has said evidence of one person who's confused is substantial. This is direct evidence of individual purchasers that they were told these were Tiffany rings by salespeople in Costco stores. Admission against party interest. Has that evidence been rebutted by admissible evidence? No. You once again are mixing apples and oranges. And you said evidence of one is sufficient to show likelihood of confusion. That's correct. I was asking you about whether it's undisputed, whether it's all on one side about willfulness. And I don't I don't I don't contradict that the evidence that you were citing is evidence that tends to show willfulness. The question is whether it's unrebutted, whether there's no evidence on the other side that would be that would create an issue of disputed material fact. As the court's probably aware, Judge Swain had a written decision in October 2013 on the production of the purchaser lists. We fought hard for that. Costco didn't want to give us the names and addresses of those people and told the court it wanted to conduct a survey of those people. And we discussed in our brief their use of the telephone calls. I could discuss that with the court in greater detail, but what's relevant to that here is they had the name and address of every purchaser of every ring. Costco did not offer evidence from one purchaser who was not confused, not one purchaser who testified that my salesperson did not tell me it was a Tiffany ring. We also offered the investigative report of investigative services at a two nine oh three of the record. The declaration of Brittany to nine zero three is the declaration of Brittany Pop. Brittany Pot also testified a trial of the damages trial. She has a report where she talks about discussing with a gene LaBarbera. These rings, Gene LaBarbera told them they were Tiffany rings. I then deposed Gene LaBarbera and she admitted she called the rings Tiffany because that's what the sign said. So these are not only, this is not only testimony that goes to likelihood of confusion. This shows that Costco is actually selling the rings as the sign said, as Tiffany rings. So there's further evidence of willfulness. We can also talk about what you would expect to find. We can start from the following proposition. I started with the proposition if somebody said to you, if a bride said to you, I have a Tiffany engagement ring, you'd immediately think of Tiffany. Even Costco knew that. So this is not a case where Costco is coming to court because we would have had a different case if Costco said this was a mistake. I think your adversary's argument, though, which I'd like you to address, is that the rings are displayed in a case that labels them by reference to their settings. And it's in that context that calling something a Tiffany ring rather than a cathedral ring or a bezel ring has to be considered. And it's in that context that Tiffany ring refers to its setting. Now, I understand that, you know, you have a very different view of it, but to make sure I understand what that is, would you address that particular argument? Sure. First of all, there's no proof that there was ever within any jewelry case on every ring a sign that had the setting style. The evidence is to the contrary. These things were marked in all different ways. The specimen signs in their briefs... Isn't that itself a disputed fact, then? No, it's not, because Costco has no idea what's in any store. There's direct evidence that Costco does not know what signs are in any store at any given time. They don't track this. Separately, they produced plenty of sign records that showed no setting style for diamond engagement. Everything doesn't show the setting style. Most importantly, the only real actual photograph of a sign in a jewelry case in an operational store is a photograph taken by Tiffany's investigator. The signs that are in Costco's brief are manufactured. They're not real. And I know they're not real for one reason. We got evidence on what a real sign looks like. When signs are put on the floor at Costco... This was Jean LaBarbera who testified to this. When signs are put on the floor at Costco, they put a date on the sign so they can, at least in the store, know how long it's been in the store and, I guess, track whether it's old merchandise. If you look at the signs in their brief, not one of the signs has a date on it. It all has the M-M-D-D-Y-Y-Y-Y. So we don't even have dates. They can't match those signs in the store at any time. This is all after the fact. But what happened in this case was the lawyers had theories that never connected up to the evidence in the case. And it took Judge Swain going through the evidence to do that, as this case was progressing. And I was gathering discovery and taking depositions. It was nonstop new arguments, like whack-a-mole, every time. You're saying that evidence should have been excluded because it was bogus evidence created after the fact? No, I'm saying that the evidence, the signs that are in the brief, there's no proof that those signs were ever in a jury. Were they used in the district court? They were in the brief. They argued the same thing in the brief. We had evidence to show that they weren't real, that those signs were manufactured signs for purposes of litigation. You argued that to the district court? We did. Did you argue that it should be stricken as evidence, that it shouldn't be considered evidence? Well, that was on the summary judgment. Yes, on the summary judgment. Did you argue that's not evidence? We did not argue. Obviously, he's winning some pages. You're asking us to say it's not evidence. You're asking us to make a conclusion that it shouldn't be considered evidence. But you didn't argue that to the district judge. You didn't secure the exclusion of that evidence from the summary judgment consideration. What I'm saying, Judge LaValle, is you can't take that sign information and conclude, based upon the fact that it's in a brief, that those signs — Judge Raggi asked me whether it was in the — It was used in the district court as evidence. Not that it was in the jewelry case at the same time, next to the Tiffany signs at the same time. That's never been argued by Costco. Costco has never argued that every ring — and if counsel would say that here, we could go and find that it's not true. Every ring does not have a setting style on the sign. That, they don't argue. That, they don't claim. They sometimes put the setting style on the ring signs. And when they said — by the way, the issue — one of the issues was, was Tiffany setting, the phrase Tiffany setting, an issue in this case? The answer was no. We're talking about Tiffany as a standalone. And cathedral's not a trademark. And basket's not a trademark. They all have prongs. There's no proof that customers have any knowledge of the distinction or difference between a basket — We have signs on the record that say — that have cathedral on them and channel on them. And you're not contending that they don't use signs next to rings in some context. What you're saying is that it is not — there's no evidence in the record that suggests that every time there was a display case that had the sign that said just Tiffany, that there was also a ring in the display case that said cathedral or channel or one of the other styles. We don't know how they — There's actually no evidence that it ever happened. So there's no proof that it actually ever happened. It's just that they actually have signs that say that. But I say, Judge LaValle, Tiffany is different. We all know Tiffany as a standalone is a registered trademark, one of the most famous trademarks in history. You would expect that even Costco, knowing that, would have had some — would have taken some precaution. I notice in the reply brief they say, well, descriptive fair use permits some level of confusion. Well, the first thing you're going to think if you put Tiffany as a standalone in a sign, that I am probably going to confuse some people because the knowledge and education, which, of course, is also not something they prove, that people know the difference between a basket set and a buttercup set and all those and why one would look different than the other, and you would know the difference if you saw it. But what about this? There's not a disclaimer. No disclaimers in the jewelry case. I just wanted to go back and clarify. I'm not sure I understand your argument correctly. It sounded to me as if you were saying — and maybe I'm wrong. It sounded to me as if you were saying that there was no evidence on the summary judgment motions before the district court, that there was no evidence that Tiffany ever used a word other than Tiffany, such as bezel, cathedral, whatever the other ones are, as a standalone to describe the setting of the stone. Is that what you're saying? I think you meant Costco never used? I'm sorry, Costco never used words like bezel, cathedral, setting words on a sign other than when they did it with Tiffany, that Tiffany was the only one for which they ever did that. Is that what you're saying? I'm saying whether they did or they did not, they didn't do it all the time, number one, Counsel says — he's talking about context when he says this. And I think what Judge Raggi was suggesting is if you looked in the case, I would see cathedral and I would see buttercup and Tiffany, and therefore I could, by that association of those words, understand that they meant a setting style. That's not the evidence in this case. There's no evidence in this case that they put the setting style or the type of setting on the sign all the time. My understanding of Costco's evidence, of Costco's contention about its evidence, is that it showed that not every time, but sometimes they had a standalone word describing the setting, whether that word was bezel or buttercup or Tiffany. Sometimes they had it without — very frequently they had it with the word set or setting. Other times they had it alone, and it was not just with respect to Tiffany, that it was with respect to either Tiffany or others, that there were times when they presented that word without the additional word set or settings. Have I got that wrong? I think I understand you correctly, and I think that you have that right. If I'm not mistaken, I think you have that right. And there are declarations of Costco employees that say they took these setting names directly from the materials that were produced by the ring vendor and displayed them on signs the same way for each setting. And I think your adversary's argument is, why isn't evidence like that enough to create an issue of fact on good faith? First of all, to answer the question directly, the evidence is that the vendors did not write those signs. The evidence is that that — it's actually a Costco form, and — It was filled out by the vendors. No, that's not even true, because I have the testimony here — So your position the vendor has nothing to do with the creation of the signs? It's not clear, but Mr. Jelinek, the CEO of the company, at 13740, page 29 of the transcript, I asked him, first of all, who fills out the information on this document? Who fills this out? Answer, the vendor quote sheet is a combination between the buyer and the supplier. So the document is also a Costco document. The evidence that we obviously — we've cited to it in our brief — is that Costco was communicating with vendors to copy Tiffany Styles, using Tiffany as a brand in the outgoing communications with those vendors. What Judge Swain — Judge Swain found no proof that the vendors filled these in. That's number one. Number two, this vendor we're talking about is a small vendor on 47th Street. Costco is the fourth largest retailer in the world. Costco is coming to this court, came to the district court, and said it's the vendor's fault for calling these Tiffany, as if Costco doesn't know better. And I put to this court, I can't imagine a circumstance where I would put Tiffany alone in the sign to describe Tiffany's most important item, the diamond engagement ring, the one thing that Tiffany is probably most famous for, that they thought, because this is not a question of mistake, they thought they had an absolute right, and they still believe they have an absolute right, to call these rings Tiffany, stand-alone. They did end this argument, but going back to Judge LaValle's point, the only question before us is whether this could be decided as a matter of a law, a summary judgment. You're not disputing that because of the tremendous success of the Tiffany setting, that has become a generic item, right? I mean, Tiffany setting is not something that you can claim any more exclusive to Tiffany. It's not part of this case, and I've made it clear from the beginning, Tiffany setting, the phrase, is a completely different evaluation. In Tiffany setting, by the way, the Tiffany is capital T. Everyone uses it as a capital T. That being said, the six purchasers who testified had never heard of it. My own unscientific... Well, there might be a number of purchasers who've never heard of it. Nevertheless, you were not allowed to pursue this claim on a theory that describing a Tiffany setting violated any rights of your client, right? It was not that we were not allowed. We sued for what we saw. We did not see Tiffany setting. The Tiffany setting argument came out in discovery when Costco said, this is what this is and why we did it. But we sued for what we saw. I perhaps need to get right to it, is that as long as there's any possibility that Tiffany was being used as a shorthand for Tiffany setting, which counsel argues is an inference that can be drawn from context, if that's so, why isn't this necessarily a question of fact then? I mean, you may prevail. You may have the stronger argument ultimately, but how is it decided as a matter of law? I'm trying to think of other examples of where this could be. A lot of folk-flavored syrup, let's say, or Nike-style sneakers. I'm not sure that that's used as commonly as Tiffany setting for diamond engagement rings. Well, but I think what the concept here is, let's assume, let's just assume for a moment that Tiffany setting would not be protected. Let's just assume that. I'm not conceding it, I'm just assuming it for the purposes of this argument. When you remove the word setting, you remove any descriptive element and you're left simply with the noun, even in the phrase Tiffany setting, which is a brand. Even if Tiffany setting is a capital T, it's not a lowercase T. But my problem with that is I do think context would matter. If the person who was setting the ring were talking to a co-worker and saying it's a Tiffany, in that context it might very well refer only to the setting because that's the only concern they have. You, of course, have a much different argument. This is, you know, the sale to the purchaser. But I'm not sure you can say that as soon as you remove the word setting, it cannot refer to setting. But the point is we're talking about, first of all, we're talking about a trademark, which is a valid, existing, been enforced forever trademark that everyone knows. And while I, and we have intentional act, there's no disputing they did this willfully, intentionally, whether or not the intent was to, they say the intent was, pardon me? Willfully. Willfully and intentionally are not the same thing. I agree with you. Willfully, but that, you know. Willfully is what we're talking about. I understand. So there is the, let's look at what it, take, for example, even the, after the summary judgment was granted, Judge LaValle, you were one of the judges who signed the dismissal order of the attempted appeal. And on that appeal, just during the pendency of the rest of the case, Costco argued that its First Amendment right to call these rings Tiffany was being infringed. Look at the things that don't exist in this case. There's no evidence. No disclaimers in the jewelry case, despite knowing that this word they're using intentionally could confuse at least some of the three million people who walk through their stores. No use of Costco's own trademarks in the boxes or the rings. It's undisputed. Whatever it is that's on that ring, and obviously they blew it up giant. I have the ring here if you even want to see it. I can show it to you. You can look and see how small this is. But even in a real Tiffany ring, it's tiny. You'd need a jeweler's loop to see it. But it doesn't say RB. It's a diamond-shaped thing. And what Harjit Grewal, on summary judgment, put in evidence was that this is what's called a manufacturer's mark. The prominent part of this mark is PLAT. It says PLAT. That's hardly a trademark. That's just describing the metal content as a matter of law. The diamond shape is unrecognizable. There's no proof in this record that Costco asked a single purchaser if they knew how Tiffany diamond rings were marked, so that if they looked inside the ring. This is also not a case like one of a, take a, you know, a famous brand handbag or something that's emblazoned with a trademark that everybody sees when you wear it. Once you're given an engagement ring, it's put on a finger. Many people never take it off. And the trademark is not visible even on an authentic Tiffany ring. So the fact that you go to Costco, don't get the box, save $3,000 on the ring, and get to get a Tiffany ring without the box, the implicit communication to the customer, especially from the salespeople, is we found these rings like we find all this other stuff that we get in our, that we find off-market, and if you're willing to forego the box, you can save $3,000 and have a Tiffany ring. That's what these people thought. We talk about de minimis returns. There were 4,000-plus sales. The evidence is there were 1,500 returns. 1,500. I have that, if you want, in the record. I can show you, I can tell you exactly where that is. And on those 1,500 returns, we don't know what everybody returned the ring for, but you don't get the box. The other evidence is you don't get the box until you've paid for the ring. Same thing happens with Tiffany, by the way. I have a Tiffany ring. I have it in the record at 15059. I'm not sure I understand what you're referring to when you're saying that there were 1,500 returns. What happened, we did, there was an accounting done of the, if I could find it, I could probably find it for you in a second here. This is the testimony. This was the testimony. It's from the trial, but at least it was also in the record on the summary judgment motion. This was the 30, pardon me, it's page 12557 of the record. Thank you. Lines 4 to 13. Okay, so go to the bottom of the, this is Mr. Hesketh, who was their financial person. So go to the bottom of the units column where the sales end. Assuming it goes to returns afterwards, I just want to have the total number of units sold on the spreadsheet and the total dollar amount of units sold. So the break is right there. If I go up, there is 4,053 units for 17.1 million. Looking at it this way. Now, can you please total the returns and the dollar value of the returns of the voids? Answer, so the negative unit total is 1,501. So that's returns. Now, Costco. Returns of what? Of these rings. Of the rings of the purchasers that were on the purchaser list of rings that had 50 in the signs. The rings that were at issue in this case. Uh-huh. So we don't know why everybody, but I would say to you that it's not just 47. Now, they sent the letter after. You're talking about different statistics. You're not disagreeing with the statistics that your adversary gave me with respect to how many returns there were after Costco wrote to the people who had purchased and said, explained that the two different meanings, that there was no intent to communicate that it came from Tiffany. And at that time, I was told 43 out of approximately 3,300 returned. You're talking about a different statistic. Total, we don't know how many letters were sent. That's also. What? We don't know how many letters were sent, but let's say 2,500, because that seems to be a number that they used at some point to say it was 2,500 letters were sent, they say. It was a question whether it was 11,000 or 2,500, because this could have been a bigger problem. We just don't know. The letter itself did not describe that the sign. It's a cagey letter. You're asking about the numbers. Pardon me? I'm asking you about the numbers. Your adversary. Yes, I agree with that. 40 some odd. I think there were more than that. I think it's 40 some odd who people said. You're talking about people who returned before any of this dispute arose, people who bought the rings and then returned them. Right. So I would say if we're going to talk about empirical evidence, there's empirical evidence as well that when people got the packaging and didn't get the blue box, they immediately returned the ring or they didn't keep it. No, but you don't know that. We don't know that, but we also don't know. Engagements could have been broken. People decided they wanted a different ring. I mean, there are any number of possibilities. The only point is to say only 46 people were confused is a misstatement. We don't know that. We know that we have actual. We know the number that returned the ring in response to the letter. That's what we know. After litigation started and that there was a hard fight over giving us the names and addresses of those people so that we could speak with them. Costco makes a point in its reply brief. Was it after litigation started or after the receipt of a cease and desist letter? After litigation started. The evidence also establishes that the purchaser list runs through August 2013. Costco says it pulled all the signs December 2012. Well, that doesn't match. At trial it came out that they offered signs dated March 2013. And the testimony of Mr. Hesketh at trial was that he didn't put a block on the account until March 2013. So, as I said at the outset, counsel has made many arguments throughout this case. We were required to gather evidence in discovery. We all know that a motion for summary judgment is the time to lay bare your proof. Let's talk for just one second, if I can, about the lack of a survey from Costco. To the extent they didn't do one or they did one and it came out badly and we never saw it. If Tiffany, if we agree that Tiffany standing alone is as we all know it to be, the world famous having been protected forever trademark that describes jewelry from the famous company, and that's what the standalone word means, then you can't use that word descriptively because it's the name of the founder of Tiffany, Charles Lewis Tiffany, and it's an arbitrary trademark. Arbitrary trademarks cannot be used descriptively. This is how Costco, you have to read closely a lot of times what Costco says. This is what they say at page 19 of their brief to describe their defense. Costco's use of this generic term on display signs to accurately describe the rings, have this unprotected design, is a lawful fair use. So it's Costco that claims the word Tiffany is generic, and as being generic, it gives them a right to use it descriptively. That's their argument. In order to prove genericism, you need to do something to show or to counter the survey that Tiffany did showing likelihood of confusion, and that 9 out of 10 people surveyed thought Tiffany standing alone meant the brand. If they put on a sign, this ring has what is known in the industry as a Tiffany setting. This does not mean that the Tiffany company has any connection whatsoever to the ring. All it means is that it is set with a certain type of prongs and cut, which is known in the industry as a Tiffany setting, and Tiffany settings can come from any manufacturer whatsoever. If they put that on a ring, would you be able to sue them for trademark? That's a little different than saying Tiffany style or whatever. You know, if you use the word style to describe something. They used the word Tiffany. They used it in what seems to me like a generic to describe the setting, a generic description of the setting. It's my understanding you would not be able to win a trademark infringement case for putting up a sign like that. So it's Tiffany standing alone or with more than Tiffany standing alone? Or just Tiffany by a single word? No, my hypothetical is that they have a lot more than Tiffany standing alone. They're using it in what seems to me to be a generic manner. They're using the word Tiffany in a generic manner as a description of a style. You don't contend that you would be able to prevent that, do you? If we're talking about two different things here, I think if we're talking about Tiffany standing alone, the answer is yes. I think I can prevent that. I think I should be able to. I'm talking about whether the word Tiffany can serve as a generic, as a description of the setting. When it says Tiffany setting, that's not a trademark infringement, is it? But you have to – you're using the word generic now. In order to prove genericism under Feathercombs, it's the – consumer perception matters. So we proved consumer perception. We proved confusion. We proved likelihood of confusion. We have actual and likelihood of confusion. So I would agree with you, Judge LaValle, that if genericism was the issue, and that was the only issue below, it really – this fair use argument has kind of evolved on appeal. Below, the argument was they counterclaimed that the Tiffany mark was generic, and the use – more like this sentence here, that the generic use of Tiffany is a fair use, what you're saying. But then you have to prove it's generic. And that – there's a complete absence of proof on Costco's part that this is generic. It's a very finely sliced argument they're making. I don't have any problem with the proposition that the use of the word Tiffany by itself carries a high likelihood of confusion in this context. The issue is whether it was willful, whether it was – or rather, the issue is whether that was a disputed issue of fact. The issue is whether there was evidence on both sides of the question of whether it was a willful attempt to deceive as opposed to something else. So let me follow you with that, Judge LaValle, because I agree with you. Tiffany alone is a high likelihood of confusion. Costco, being the retailer it is, it sells toilet paper and all kinds of things. So everybody walking in the store is not sophisticated, and this is a locked case at the entrance of every store. And it's their most important – the evidence is it's the most important part of their store because it shows off some of the high-end stuff. So Costco knew that there was a high likelihood that when it went to using Tiffany standing alone in these signs, that it was likely to confuse. Okay? It had to be. It's like we can take – yeah. Yeah. So these are the things that you don't see in this case that would be evidence of good faith, the kinds of things that you look for in cases when you find whether someone's acting in good faith. No disclaimers in the jewelry case to say what you're saying, Judge LaValle, that these are not Tiffany rings. This is the style of the ring. No use of Costco's own trademarks on the rings or the boxes so that – because putting aside the small jewelry manufacturer nobody heard of, these are Costco rings. They're made to Costco specifications. The evidence is – You don't have to persuade me that there was evidence of likelihood of confusion, but that's not the issue. The issue was whether there was sufficient evidence of absence of intent to deceive, of willfulness. Right. To make that an issue for the jury. Well, no. Your Honor, I would say to you we have no communications with any salespeople. Don't call them Tiffany rings. Nothing. No training of anyone in trademarks. One of the things that the court has said is always an indication or can be an indication of good faith is a request for legal guidance. Ask your in-house lawyers. Ask your in-house lawyers, can we call this Tiffany? There are cases dated – if I add cases to 1932 saying that the strength of the Tiffany mark – and there's a federal district case out of Texas that said the mark is almost as arbitrary as Kodak or Exxon. They did nothing. They were copying – Your argument is that there would be much more evidence in the record. There's an absence of training, all the things that would have suggested good faith, and to the extent that there is evidence of good faith, it's misstated or de minimis. The Costco declarations by employees saying we were using this mark descriptively aren't enough. It's not enough for them to declare that they took the setting names in collaboration from the vendor to describe the setting. I mean, the argument's been extended, and I don't want to cut off any questions, but I also want to just alert you. You should think of taking about four more minutes and see if we have additional arguments to make sure you've made all the points you want to make. Thank you. Turning again to the willfulness point, we also established on the affirmative side the pervasive copying of Tiffany styles, the providing of inflated appraisals with these rings that approximated the price of real Tiffany rings, and obviously the salespeople telling customers these were Tiffany rings. The theory of the motion for summary judgment before Judge Swain was that at the conclusion of discovery, we lay bare our proof, and one against the other, we see if there's an issue to try. Costco says that it should be allowed to present its state of mind to the jury as an argument. But state of mind is proven by corporations through what people said or did. It is undisputed. Costco doesn't know when this first started. It also doesn't know who first started to use this. So it has no proof that ever connects all of these theories from dictionaries and historic usage that the person who did this, in fact, did it for that reason. That's a failure proof. Also, the evidence was, or the evidence was undisputed, that Costco, I'm sorry, back up, to finalize that point. So where we have, this is not just a case of, what you really end up with at the end of this case is Costco saying, we were using the truncated Tiffany alone to describe Tiffany setting. That's their argument. The evidence is, one, there's no proof of that. They don't know who did it and who started it. They can't connect any of that to a human being. That's lawyers making that argument. Second, salespeople were saying otherwise. And if this was not, and they were copying all the different styles. Let me, Judge, let me see if I can just move on to some things I don't lose track. With respect to counterfeiting, this is obviously identical to the Tiffany mark. I say that if this court's going to create some exception here, that now, you know, that because it said it on the signs and not on the rings, and that the context of a membership warehouse where everything is sold at a discount, and where the implicit message from the company is that we find these things all over the world, that now we're going to say, well, signs alone don't count if there's no branding anywhere else. I would say that's a very dangerous precedent because I can see a lot of people driving a huge truck through that hole. These signs were identical. Every single sign except for fresh produce has the brand name of an item on Costco. You want to talk about training your customers? Customers know that the brand's on the sign. It's not on the ring. So what? We have no proof that customers even know how this would be. They didn't put that proof in. And most importantly, we're talking about a retailer of great fame, Costco. When they tell their customers in signs and by salespeople, a ring is made by Tiffany, why would the customer not believe Costco? Especially when its entire business model is centered on selling brands for less. Why would they not believe them? People thought they got authentic rings. There's one final thing on punitive damages. Judge Reidy, you were asking about the punitive damages instruction. The punitive damages instruction was actually drafted by Costco. It was their punitive damages instruction. So the one that was used was the one they asked for. We argued over it, but we used theirs. At closing, their lawyer said it meant the following. And run over a four-year-old child and kill her. That might meet the standards, close quote. That's what he said the standard was. And the jury still came back and awarded punitive damages. And Costco, at trial, presented all the same explanations and arguments to the jury. They had Mr. Palmieri there. He had the ring settings. And the jury unanimously agreed that this was reprehensible conduct. By failing to propose an instruction, we were deprived of the opportunity to negotiate what it might say or even to agree, and while you have a jury in panel, that would be improper. Judge Swain also said after trial that the award of profits was a proxy for damages. And that's ‑‑ I think that's probably a use of discretion review standard on whether, in fact, it would be. Under New York law, even equitable relief can give rise to punitive damages. So there's certainly enough there. And in closing, I just ‑‑ I simply want to say to the Court, the challenge of the case has always been to get to the evidence. The summary judgment motion got to the evidence. It's not theoretical. It's not based on speculation. We deposed the senior executives of the company. We deposed all the people relevant who had information. They don't have any proof of their state of mind to an individual who is responsible for putting this in science. They do not. It's all speculation. Thank you. I would ask that the Court kindly affirm the decision. This has been a very extended argument, and we certainly appreciate the Court's interest in it. So let me just try to respond to just a few of those points. I think much of our response is probably clear from our brief in my prior argument. Mr. Mitchell started by saying, what if we told people we sold Tiffany engagement rings? We never did. There's no evidence in the record that we told people we sold Tiffany engagement rings. He did cite a single consumer who said, an employee told me the ring was made by Tiffany. One example. If that employee said it, we're embarrassed by it. And maybe we should have done a better job making sure that employees didn't mislead our customers if, indeed, they said this ring was made by Tiffany. But the overwhelming evidence that we had signs that used Tiffany as the setting name, just like all the other signs, that should have been considered by a jury. Now, what else did consumers... The argument that the evidence you put into that effect was created for litigation rather than actual signs from your store. Do you want to respond to that? It's just not accurate, Your Honor. And I'll tell you why. If you look at Mr. Heskett's declaration, which is at page 83054, he explains the process. These signs are in the computer system. They're printed for each product, and it is true that the signs in our brief, these were reproduced from the computer system. But there's also substantial evidence in the record, and I would point the Court on the hard drive we submitted, the Costco file 12513. There's evidence that we actually used channel setting, actually used diamond channel, channel wedding ring, diamond bezel set. I understand that, but if you've just told us you agree that they were created out of your computer system, what we don't have then is any evidence showing how they would be displayed in a case on a given day. Am I right? There is a photo in our brief, and unfortunately, Your Honor, I think it's probably not legible on page 8. But it just gives you a sense of how there's many signs next to many different rings. And we have a large number of rings that use channel, cathedral, bezel. That is in the record. What we don't have, Your Honor, is in each individual store on any given day what was the exact mix of that. But there's substantial evidence that we sell rings with all those settings, and all those signs were used. And the suggestion that we manufactured evidence, I must say, is absolutely poorly taken here. And that was not before the Court, and it's not proper. Now, what do consumers... He's essentially arguing to us that if the evidence that was presented to the Court on the summary judgment motion had been presented to a jury in a trial of the issue of liability, and the jury had rendered a verdict that we find no willfulness and had declined to order punitive damages and so forth, that would have to be reversed by us. We would have to reverse the judgment because we would have to find that a jury could not reasonably find absence of willfulness on this record. That is the remarkable proposition that the plaintiffs bring to you today, Your Honor. Now, very, very briefly, I'll ask you to look at pages 42 and 43 of our brief, because you'll see what consumers actually said when they called them. They called our customers and asked them, and consumers said, oh, no, it said Tiffany Stylering, it wasn't made by Tiffany. Consumers know that. These are fact questions that should have gone to the jury. And I think maybe the last point I'll just want to make is looking at what the District Court said she did. The District Court looked at the evidence about good faith, about willfulness, at page 15 and 16 of the special appendix. She described what our evidence was, and then she said, but that evidence is untenable, and I find more compelling Tiffany's evidence. That is not the role of the District Court on summary judgment. It is not up to the District Judge to decide, is it tenable? And when we put in our criticism of their survey, she acknowledged our criticisms, and what she said was, well, those criticisms go to the weight. Yes, they do. But what did she do? She then weighed the evidence, and she found in favor of Tiffany. That is why summary judgment was improper. And respectfully, we do ask that this Court reverse and send us back for a trial on the infringement issues, but that this Court make clear that this is not counterfeiting and no punitive damages are appropriate at the retrial. Thank you very much, Your Honors. Thank you both. Very helpful, well argued on both sides. Thank you.